Raymond J. DONOVAN, Secretary of
Labor, United States Department of
Labor, Appellee,

v.

TRINITY INDUSTRIES, INC., a Texas
Corporation doing business in Critten-
den County, Arkansas, as Hackney,
Inc., and John Brooks, Appellants.

Raymond J. DONOVAN, Secretary of
Labor, United States Department of
Labor, Appellee,

v.

TRINITY INDUSTRIES, INC., a Texas
Corporation doing business in Critten-
den County, Arkansas, as Hackney,
Inc., and Donald Stephens, Appellants.

No. 86–1623.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 12, 1987.

Decided July 22, 1987.

Rehearing and Rehearing En Banc
Denied Sept. 24, 1987.

Robert E. Rader, Jr., Dallas, Tex., for
appellants.

Andrea C. Casson, Washington, D.C., for
appellee.

Before HEANEY, McMILLIAN and
FAGG, Circuit Judges.

HEANEY, Circuit Judge.

In 1983, a federal magistrate issued the Secretary of Labor two warrants, one authorizing a health inspection and the other a safety inspection of Trinity Industries, Inc.'s, Crittenden County, Arkansas, pipe fabricating plant for possible violations of the Occupational Safety and Health Act, 29 U.S.C. §§ 651–678. Trinity refused to permit both inspections. The Secretary petitioned the district court to hold Trinity, plant manager John Brooks, and office manager Donald Stephens in civil contempt for failing to honor the warrants. In the contempt proceeding, Trinity filed a counterclaim for a declaratory judgment that both warrants were invalid because the Secretary had not established probable cause and because the administrative plan for scheduling health and safety inspections was invalid. Trinity attempted to discover information concerning the formulation and operation of the Occupational Health and Safety Administration's (OSHA) safety and health inspection programs as well as the inspection of Trinity pursuant to those programs. The district court dismissed Trinity's counterclaim, upheld the validity of the warrants, held Trinity, Brooks, and Stephens in civil contempt, and ordered Trinity to pay a civil fine of $1,000 per day as of May 1, 1986. The district court stayed judgment pending appeal.

In this appeal, appellants claim: 1) the Secretary did not establish probable cause to justify issuance of the warrants; 2) the district court erred in not permitting discovery into the plan; and 3) the district court erred in holding Brooks and Stephens in contempt. The Secretary asserts that Trinity is collaterally estopped from litigating the issue of whether it is entitled to a declaratory judgment and discovery because it previously unsuccessfully litigated the same issue in two other Circuit Courts. *See Donovan v. Mosher Steel Company,* 791 F.2d 1535 (11th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 874, 93 L.Ed.2d 829 (1987); *Donovan v. Hackney, Inc.,* 769 F.2d 650 (10th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1458, 89 L.Ed.2d 715 (1986). Without deciding the collateral estoppel question, we affirm.

**I**

The first question is whether the United States Magistrate acted on probable cause in issuing the warrants authorizing the health and safety inspections of the Trinity plant.

■ The starting point for any discussion of probable cause for an administrative search is *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), where the Supreme Court stated:

> For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment]." * * * A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights.

*Id.* at 320–21, 98 S.Ct. at 1824–25 (citations and footnotes omitted).

Therefore, an administrative warrant is constitutional if it is issued pursuant to a neutral plan based on specific criteria and if the warrant application clearly and adequately explains how an inspection of the particular company falls within the plan. *See Brock v. Gretna,* 769 F.2d 1110, 1112 (5th Cir.1985). With *Barlow's* two-prong test in mind, we examine the warrant applications.

**A. The Plan**

■ The health and safety warrant applications were essentially identical. Both included a copy of the administrative plan for

programmed inspections, OSHA CPL 2.25C, and a sworn affidavit by an OSHA supervisor declaring that Trinity was selected for a health (or safety) inspection pursuant to this plan.

Outlined in Appendix B to OSHA CPL 2.25C and by counsel for the Secretary at oral argument before this Court, the plan provides a multi-step ranking system for the inspection of companies within high hazard industries.

First, the national OSHA office provides the area OSHA office with a statewide Industry Ranking Report ranking 4-digit Standard Industrial Classification (SIC) Codes according to lost workday injury (LWDI) rates (for safety inspections) or on their potential exposure to hazardous substances (for health inspections). The industry with the highest LWDI rate or greatest exposure to hazardous substances is ranked first. The national office also provides each area OSHA office with a list of establishments for each SIC Code on the Statewide Industry Ranking Report located within the area office's jurisdiction. Establishments with ten or fewer employees are not shown on the list and establishments with a better LWDI rate than the national average for all industry are not included on the list for safety inspections. The establishments are listed by SIC Code, by county, and by establishment size. Within each SIC Code, counties are listed alphabetically.[1] Within each county, firms are listed according to size with establishments having the largest number of employees listed first.

Second, prior to using the list provided by the national office, the area office corrects any errors by making appropriate additions or deletions to the list. For example, any establishment with less than ten employees, or that is no longer in business, or that was inspected within the previous fiscal year would be deleted from the list. For health inspections, an establishment will be deleted from the list if a substantially complete health inspection was completed within the current or previous three fiscal years with no serious violations cited. After all deletions and additions are made, establishments on the list are numbered consecutively.

Finally, the inspection register is compiled by the area office. The agency calculates the number of establishments on the register by doubling the number of programmed inspections projected for the fiscal year. The inspection register is then divided into two cycles with those companies listed in the first one-half of the list in cycle one and those establishments in the second one-half in cycle two. Within an inspection cycle, establishments may be inspected in any order that makes efficient use of resources. With only limited exceptions, each inspection cycle must be completed with only limited exceptions before a new cycle is begun.

In our view, the plan is a rational and neutral one which satisfies the requirements of the first prong of the *Barlow's* test. It is clearly designed to protect the greatest number of employees exposed to the greatest risks to health on the job. First, for safety inspections, only companies with a safety record worse than the national average for all industry in the private sector are ever inspected. For both health and safety, companies are ranked on a worst first basis so that companies in the industries posing the greatest health risk to employees are inspected first. Within the worst industries, companies are ranked alphabetically according to county. While it is conceivable that a company in a hazardous industry could escape inspection if it operated in a county whose name begins with a letter near the end of the alphabet, this step is nevertheless sufficiently neutral so as to satisfy the requirements of *Barlow's*. If this were a step employed exclusively in the State of Arkansas it could be suspect as a ploy to target specific companies. Considering, however, that the procedure is used nationwide, the potential

---

**1.** Appellants assert in their post-argument brief that industries are not scheduled according to the county they are in, but simply on a worst first basis according to SIC number. We disagree. The establishments are listed according to SIC number, county, and size, in that order, as is evidenced by the sample list on page 53 of the addenda to the Secretary's brief.

for abuse is nonexistent. Next, companies are listed in descending order based on the number of employees, a step which obviously furthers the purpose of using resources in a way which protects the greatest number of employees possible. Finally, we also have no problem with the obviously neutral step of dividing the inspection register into two cycles.

### B. Inspection of Trinity Pursuant to the Plan

We now turn to the second prong of the *Barlow's* test: whether the warrant application adequately explains why an inspection of Trinity is within the program. Appellants claim that it does not because it did not contain the applicable industry rank list, establishment list, or description of the procedure followed in the selection of Trinity.

The affidavit of James Males submitted in support of the application for the safety inspection warrant contained the following information:

(1) Trinity is engaged in the business of fabricating pipe.

(2) This industry is identified by SIC Code 3498.

(3) SIC Code 3498 is a high hazard SIC Code and appears on the Statewide Industry Ranking Report and has a LWDI rate of 9.2 when the national average is 3.9.

(4) The projected number of programmed safety inspections for the Little Rock area office in fiscal year 1983 is 480. After doubling the number and subtracting last year's unexecuted inspections, the inspection register was completed with 924 establishments.

(5) After dividing it into two cycles, each with 462 companies, Trinity appeared on the first cycle.

(6) Four hundred and seven of the 462 had been selected for inspection by the time Trinity was visited.

The affidavit of Charles H. Crowe in support of the application for the health inspection warrant contained the following information:

(1) Trinity is in the business of fabricating pipe and pipe fittings, assigned SIC Code 3498 which is a high hazard health industry classification.

(2) The projected number of programmed health inspections for the Little Rock area office in fiscal year 1983 was 72. The number was doubled to 144.

(3) Trinity was selected during the first inspection cycle. Of the 72, 24 had already been inspected by the time Trinity was selected.

We reject the appellants arguments and hold that the warrant applications were sufficient. They clearly contained a detailed description of the precise procedure followed in the selection of Trinity. Although we see no logical reason for the agency's failure to furnish Trinity the requested lists, that failure was not prejudicial. In fact, Trinity does not claim that the agency did not follow the plan, and, in the absence of such a claim substantiated by evidence, Trinity is not entitled to the requested lists as a matter of right.

## II

Trinity's next argument is that the district court erred in not permitting discovery concerning OSHA's inspection plan pursuant to its counterclaim for declaratory relief. It claims it was entitled to examine the industry and establishment lists upon which its name appeared and the inspection register compiled by OSHA from these lists. Apparently, Trinity wanted to see how it compared to other companies in the area to determine whether its inspection number fairly and accurately came due.

■ Evidence outside the application may be presented to a reviewing court only in the limited situation of a claim of fraud in the securing of the warrant. *Gretna*, 769 F.2d at 1114. Because Trinity presented no evidence to suggest fraud on the part of the government in the procurement of the warrants, judicial review was properly limited to the materials presented to the magistrate.

## III

Trinity's final argument is that the district court erred in holding Brooks and Stephens in contempt. Its argument, essentially, is that since the plant managers were merely performing a service for the corporation, they should not be individually held in contempt. We disagree.

"It is well established * * * that an officer, responsible for the corporation's affairs and for its disobedience, may be held liable for contempt." *NLRB v. Maine Caterers, Inc.*, 732 F.2d 689, 691 (1st Cir. 1984). *See also Donovan v. Hackney, Inc.*, 769 F.2d 650 (10th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1458, 89 L.Ed.2d 715 (1986). We hold that the district court acted within its discretion in holding Trinity's managers in civil contempt for their role in refusing to honor the warrants.

Since we decide all the issues presented in this case in favor of the Secretary, we need not decide the collateral estoppel issue. Affirmed.