In the Matter of ESTABLISHMENT IN-
SPECTION OF GILBERT & BENNETT
MANUFACTURING COMPANY, a cor-
poration.

Appeal of Raymond H. ROUTH and
Frank A. Elton.

Ray MARSHALL, Secretary of Labor,
United States Department of Labor,
Plaintiff-Appellee,

v.

CHROMALLOY AMERICAN CORPORA-
TION, Federal Malleable Division,
Defendant-Appellant.

Nos. 77–1459, 77–1744.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 10, 1977.

Decided Jan. 2, 1979.

Rehearings and Rehearing En Banc
Denied March 14, 1979.

Pell, Circuit Judge, concurred in part
and dissented in part with opinion.

Ronald Clay Bennett, Chicago, Ill., Clifford B. Buelow, Milwaukee, Wis., for defendant-appellant.

Michael H. Levin, Appellate Litigation, Charles I. Hadden, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellee.

Before SWYGERT and PELL, Circuit Judges, and CAMPBELL, Senior District Judge.*

SWYGERT, Circuit Judge.

These appeals present questions concerning the legality of administrative inspection warrants issued pursuant to the Occupational Safety and Health Act of 1970 [hereinafter the "Act"], 29 U.S.C. §§ 651 et seq.[1]

Gilbert & Bennett Manufacturing Company is appealing an April 17, 1977 order denying the Company's motion to quash an administrative inspection warrant issued pursuant to the Act, and holding the Company in civil contempt for refusing to comply with that warrant.[2] In this appeal the warrant to conduct an inspection was based on an employee complaint of an unsafe working condition. Pursuant to section 8(f)(1) of the Act, 29 U.S.C. § 657(f)(1), such inspections are required in response to an employee complaint.[3]

Chromalloy American Corporation is appealing a similar order holding the company in contempt for refusing to comply with a duly-issued OSHA warrant authorizing inspection of its West Allis, Wisconsin plant. In the Chromalloy appeal the warrant to inspect was issued after a finding of probable cause based on the purpose of the Act, that is, to afford safe and healthful conditions in the workplace, and on the inherently dangerous nature of Chromalloy's foundry business.

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. These appeals were orally argued on the same day and before the same panel. They are being consolidated for purposes of this opinion.

2. Gilbert and Bennett also appealed another order issuing a bench warrant against individual employees Routh and Elton, and fining the Company $1,000 for continuing to refuse to comply with the court's order. Later the district court denied the Company's motion to reduce this fine, and the Company thereafter amended its notice of appeal to include this action as well. The propriety of this fine was abandoned on appeal and will not be considered here.

3. Section 8(f)(1), 29 U.S.C. § 657(f)(1), of the Act provides:

Any employees or representative of employees who believe that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists, may request an inspection by giving notice to the Secretary or his authorized representative of such violation or danger. Any such notice shall be reduced to writing, shall set forth with reasonable particularity the grounds for the notice, and shall be signed by the employees or representative of employees, and a copy shall be provided the employer or his agent no later than at the time of inspection, except that upon the request of the person giving such notice, his name and the names of individual employees referred to therein shall not appear in such copy or on any record published, released, or made available pursuant to subsection (g) of this section. If upon receipt of such notification the Secretary determines there are reasonable grounds to believe that such violation or danger exists he shall make a special inspection in accordance with the provisions of this section as soon as practicable, to determine if such violation or danger exists. If the Secretary determines there are no reasonable grounds to believe that a violation or danger exists he shall notify the employees or representative of the employees in writing of such determination.

The appeals were fully briefed and orally argued prior to the Supreme Court rendering its decision in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), holding non-consensual, warrantless OSHA inspections unconstitutional. As that decision was deemed relevant to the issues raised in these appeals, the parties were ordered to file supplemental briefs.

## I

Appeal No. 77–1459

In *Barlow's* the Court did not deal directly with the workplace inspections conducted pursuant to section 8(a), 29 U.S.C. § 657(a),[4] because in that case the Secretary of Labor had not sought an inspection warrant and no warrant was, in fact, issued. The Court proceeded to indicate, however, that probable cause could be established if specific evidence of an existing violation was presented, or alternatively, if a showing was made that reasonable legislative or administrative standards for conducting an OSHA inspection were satisfied. The Court stated, in pertinent part:

> Whether the Secretary proceeds to secure a warrant or other process, with or without prior notice, his entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. *Probable cause in the criminal law sense is not required.* For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].' *Camara v. Municipal*

*Court,* [387 U.S. 523,] 538, 87 S.Ct. [1727], 1736, [18 L.Ed.2d 930.] A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights.

436 U.S. at 320–21, 98 S.Ct. at 1824–1825 (footnotes omitted) (emphasis added).

In its supplemental brief Gilbert & Bennett has interpreted this language to mean that when a warrant is applied for on the basis of an employee complaint, the general standard of probable cause applied in criminal matters is required.

■■■ We do not agree with Gilbert & Bennett's interpretation of the first alternative basis for establishing probable cause. The *Barlow's* Court quite clearly held that "[p]robable cause in the criminal sense is not required." 436 U.S. at 320, 98 S.Ct. at 1824. Moreover, it later cited *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), a case involving inspections of private residential property as part of an enforcement program of a municipal housing code. In *Camara* the Court emphasized the controlling standard of "reasonableness" required by the Fourth Amendment and held that "in determining whether there is probable cause to issue a warrant for [an] inspection—the need for the inspection must be weighed in terms of [the] reasonable goals of code enforcement." 387 U.S. at 535, 87 S.Ct. at 1734. Finding that the inspections in *Camara* were justified by a valid public interest, in that they were "aimed at securing . . .

4. Section 8(a) of the Act, 29 U.S.C. § 657(a), provides that "in order to carry out the purposes of this chapter" the Secretary may enter any establishment, area, work place or environment "where work is performed by employees of an employer" and "inspect and investigate" any such place of employment and all "pertinent conditions, structures, machines, apparat-us, devices, equipment, and materials therein, and . . . question privately any such employer, owner, operator, agent, or employee." Inspections are to be carried out "during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner."

wide compliance with minimum physical standards for private property" in order "to prevent even the unintentional development of conditions which are hazardous to public health and safety," *id.*, the Court held that a warrant for inspection could be issued if reasonable legislative or administrative standards for conducting the inspection were satisfied. *Id.* at 538, 87 S.Ct. 1727. Such standards, which would vary depending on the code being enforced, could be based

> upon the passage of time, the nature of the building (*e. g.*, a multi-family apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling.

*Id.* Thus, the *Camara* Court developed a probable cause test for administrative-type searches of residential buildings which was less stringent than that required in criminal investigations. *See also See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) (applying the same standard to administrative searches of business establishments). Because of the aforementioned quote from *Barlow's* negating the requirement of probable cause in the criminal sense and because the OSHA inspections involved in these appeals are similar to those in *Camara* and *See*, the less stringent probable cause test must be applied here.

The application for the inspection warrant for the Gilbert & Bennett plant alleged the following bases for the issuance of the requested warrant:

 * * * * * *

 3. The desired inspection is also in response to an employee complaint that employees are required to. climb on palletized stock (wire products), which is handled by forklift trucks. Further, the employee complaint alleges that the employer would "climb" (stack) stock as high as necessary. Both items represent potential violations of section 5(a)(1) of the Act which requires employers to furnish to each of his employees employment and a place of employment which are 'free from recognized hazards that are causing or

are likely to cause death or serious physical harm to employees' in that, if conditions are as alleged at said employer's plant, employees may be in danger of injury by falling from palletized stock or hit by wire that has been rendered unsafe by stocking it to great heights, among others.

 4. There have been four prior inspections of this employer's workplace, each resulting in OSHA compliance officers response to employee complaints, in each case the responding OSHA compliance officer(s) have found and cited the employer for alleged violations of the Act as a result of their inspections.

 ■ Because the criminal law standard of probable cause is not required, Gilbert & Bennett's arguments faulting the contents of paragraph 3 must fail. *Camara* and *Barlow's* do not require that the warrant application set forth the underlying circumstances demonstrating the basis for the conclusion reached by the complainant, or that the underlying circumstances demonstrate a reason to believe that the complainant is a credible person. Nor is there a requirement that the application request be supplemented with a detailed, signed employee complaint. Complainants' names may be deleted from complaints in order to protect them from employer harassment. *See, e. g.*, 29 U.S.C. § 657(f)(1); 29 C.F.R. § 1903.11(a). The reasonableness of this anonymity is confirmed by the hostility to the compliance inspection expressed by the plant owners in these two appeals.

 ■ Here the Secretary's sworn application, detailing the employee's complaint and indicating the bases for concluding that potentially significant hazards to workers were alleged by it, afforded the magistrate sufficient factual data to conclude that a search was reasonable and that a warrant should issue.

Paragraph 4 of the warrant application, which indicates that previous employee complaints had resulted in OSHA investigations and the issuance of citations for violations of the Act, does not provide sufficient

evidence for a finding of probable cause when read in isolation. However, when read in conjunction with paragraph 3, it supplied the magistrate with relevant and important background information regarding Gilbert & Bennett's compliance history. *Usery v. Northwest Orient Airlines, Inc.*, 5 OSH Cas. (BNA) 1617, 1619–1620 (E.D. N.Y. July 10, 1977).

Gilbert & Bennett also argues on appeal that the district court judge abused his discretion and denied it due process by failing to rule on its request for discovery prior to denying its motion to quash the warrant to inspect. The Company believes that had it been able to discover certain information regarding the employee and the employee complaint it would have been able to establish grounds for challenging the application.

■ Discovery decisions are committed to the sound discretion of the district judge, and they may not be easily reversed on appeal. In the instant case the warrant application, which referred to an "employee complaint," incorporated the sworn affidavit of an OSHA compliance officer. The district judge could correctly assume, therefore, that the information contained therein was true and correct. Because this information was adequate on its face to establish probable cause there was no need to pursue further discovery, and the judge acted properly in not granting such relief. Indeed, the employee's identity was not even discoverable in this proceeding. In addition, the boiler plate language of the discovery motion was facially inadequate. It is only on appeal that the company raises the spectre of a spurious employee's complaint or the possibility that it was initiated by union functionaries desiring to harass it.

Accordingly, the decision of the district court is affirmed.

## II

Appeal No. 77–1744

Chromalloy raises three separate arguments on appeal: first, United States Magistrates are not authorized to issue OSHA search warrants; second, the warrant is not supported by probable cause; and, third, the warrant is unconstitutionally broad.

### A.

■ The first argument can be resolved without difficulty. Under the Magistrates Act of 1976, magistrates are empowered not only to exercise "all powers and duties conferred or imposed upon United States commissioners by law," (28 U.S.C. § 636(a)(1)), but to perform "such additional duties as are not inconsistent with the Constitution and laws of the United States," 28 U.S.C. § 636(b)(3).[5] The legislative history of this latter provision indicates that Congress intended district courts to be free to experiment in the assignment of duties to magistrates:

> If district judges are willing to experiment with the assignment to magistrates of other functions in aid of the business of the courts, there will be increased time available to judges for the careful and unhurried performance of their vital and traditional adjudicatory duties, and a consequent benefit to both efficiency and the quality of justice in the Federal courts.

H.R.Rep. 94–1609, 94th Cong.2d Sess., 5 U.S.Code Cong. & Admin.News, pp. 6162, 6172 (1976).

These duties are not to be restricted to only specific statutory grants of authority or limited to functions delineated in section 636(b), for example, duties only related to "any pretrial matter." The only limitations on section 636(b)(3) are that the duties be consistent with the Constitution and federal

---

**5.** The 1968 predecessor of section 636(b)(3) listed specific "additional duties" and required that magistrates be assigned them by formal rules concurred in by "a majority of all the judges of such district court." The 1976 amendment eliminated any requirement that such duties be assigned by rule, by a majority of judges, or apparently by any judges. We note, however, that the Eastern District of Wisconsin has very recently passed new local rules which specifically authorize magistrates to issue administrative inspection warrants.

laws and that they not be specifically excluded by section 636(b)(1).[6]

 Here the magistrate issued an inspection warrant pursuant to section 8(a) of the Act in order to enable the Secretary of Labor to investigate an alleged unsafe workplace. Because such a warrant is required under *Barlow's* and is not prohibited by section 636(b)(1), the magistrate was clearly acting in a manner consistent with federal law. *Accord, Empire Steel Manufacturing Co. v. Marshall*, 437 F.Supp. 873, 881–882 (D.Mont.1977). This holding precisely accords with the purpose of the Magistrates Act and the presumption that warrant requirements must be read to facilitate rather than frustrate enforcement of remedial public interest statutes. *See, e. g., Barlow's*, 436 U.S. at 322–24, 98 S.Ct. 1816; *Camara*, 387 U.S. at 533, 535–536, 538, 87 S.Ct. 1727.

B.

The second argument raised by Chromalloy is that the warrant was issued without probable cause. Pertinent paragraphs of the affidavits seeking the inspection warrant state:

\* \* \* \* \* \*

2. The desired inspection is part of an inspection and investigation program designed to assure compliance with the Act in the foundry industry, and is authorized by section 8(a) of the Act.

\* \* \* \* \* \*

9. Proper entry pursuant to section 8(a)(1) of the Act for the aforesaid purposes was attempted by duly authorized compliance officers of the Occupational Safety and Health Administration, United States Department of Labor, on the 19th day of April, 1977, *in the course of a National-Local plan designed to achieve*

*significant reduction in the high incidence of occupational injuries and illnesses found in the metal-working and foundry industry*, but the right of entry was denied by the employer, or an agent of the employer. (Emphasis added).

At issue, then, is whether the information supplied to the magistrate was sufficient to assure that *Barlow's* and *Camara's* "reasonable legislative or administrative standard for conducting an . . . inspection are satisfied with respect to a particular [establishment]." 436 U.S. at 320, 98 S.Ct. at 1824.

Paragraph 2's bare assertion that the desired inspection is "part of an inspection and investigation program . . . authorized by section 8(a) of the Act" does not indicate that the program was based on neutral criteria. Nor did the addition of the phrase "to assure compliance with the Act in the foundry business" eliminate this insufficiency. Without a more definite statement of the neutral criteria being utilized by the Secretary in selecting Chromalloy for inspection, it was impossible for the magistrate to form a conclusion of reasonableness. This finding comports with the criticism leveled by the Supreme Court in *Barlow's* at the warrant application in that case, which contained similar language as here. The Court stated: "the program was not described . . . or any facts presented that would indicate why an inspection of *Barlow's* establishment was within the program." 436 U.S. at 323 n.20, 98 S.Ct. at 1826. *See also Matter of Northwest Airlines, Inc.*, 587 F.2d 12 (7th Cir. 1978); *Dunlop v. Hertzler Enterprises, Inc.*, 418 F.Supp. 627, 629 n.3 (D.N.M.1976).

Paragraph 9 supplied additional pertinent information, namely that the inspection was part of a "National-Local plan designed to achieve significant reduction in the high

---

**6.** 28 U.S.C. § 636(b)(1) states, in pertinent part: Notwithstanding any provision of law to the contrary—
(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or to quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

incidence of occupational injuries and illnesses found in the metal-working and foundry industry." No other information was before the magistrate. And no other can be considered by this court in passing on the validity of the warrant.[7] *Aguilar v. Texas*, 378 U.S. 108, 109 n.1, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

Chromalloy argues that paragraph 9 is vague, conclusory surplusage in that it merely describes the purported purpose of the search and does not prove the hazardous nature of either this foundry or the foundry industry. Further, it faults the application for not alleging that the "high" incidence of injuries is the result of violations of OSHA standards. Finally, it claims that if this information is deemed sufficient for a finding of probable cause, then this court will have created a *per se* exception to the Fourth Amendment in that hereafter any foundry, for the sole reason that it is a foundry, will be subject to a wall-to-wall OSHA inspection.

■ In effect Chromalloy asks this court to hold that the Secretary would have to show, every time he wants a warrant, a complete set of updated industry statistics, the validity of these statistics, the rationale for applying a particular index factor to the foundry industry, and the reason for inspecting foundries in lieu of another industry. Such a massive evidentiary showing of particularized cause is required under 29 U.S.C. § 655 when OSHA standards are being established or judicially reviewed, but it is not required here either by statute or previous court decisions. To convert *Camara's* statement that proper selection criteria "will not necessarily depend upon specific knowledge of the condition of the particular [establishment]," 387 U.S. at 538, 87 S.Ct. at 1736, into a holding that these criteria must depend upon more information if the Secretary can produce more, will turn a simple warrant request hearing into a full-blown hearing.[8] Were this court to require, prior to the issuance of a warrant inspection, the detailed information which would inevitably result from such a hearing, we would be imposing on the Secretary an unwarranted "consumption of enforcement energies" which would "exceed manageable proportions." 436 U.S. at 321, 98 S.Ct. 1816. Such a situation was not intended by the Supreme Court in its decision in *Barlow's*.

On the other hand, the question remains: did the Secretary supply the magistrate enough information? *Camara* indicted that the inspection plan could be based "upon the passage of time, the nature of the building . . . , or the condition of the entire area." 387 U.S. at 538, 87 S.Ct. at 1736. Here, the magistrate was apprised of a "National-Local plan" designed to reduce the "high-incidence" of occupational injuries in the "foundry industry". Certainly, this plan can be viewed as the functional equivalent of *Camara's* "nature of the business" standard. *Cf. Reynolds Metals Co. v. Secretary of Labor*, 442 F.Supp. 195 (W.D. Va.1977).

■ *Barlow's* indicated that the general administrative plan could be

derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area.

7. The Secretary of Labor offered into evidence in the district court hearing a detailed description of this plan, entitled the National Emphasis Plan (NEP). Chromalloy objected on the grounds that the evidence had not been introduced before the magistrate and, as a result, could not be relied upon to show probable cause. The Secretary proceeded without offering any evidence which would further define this plan.

On appeal the Secretary filed several affidavits which again attempted to define and explain NEP. These affidavits were struck as not being properly before the court. The information regarding NEP, which was included in the Secretary's brief, is likewise not being considered by this court.

8. A sample of what sort of dispute would evolve permeates Chromalloy's brief. For example, it argues, inter alia, the statistics for NEP are stale, the injuries in the foundry industry are not a result of violations of OSHA standards, the injury "rate" is not a reasoned decision, and NEP was developed by virtue of an improper statutory delegation of power.

436 U.S. at 321, 98 S.Ct. at 1825. Here, although a direct statistical correlation between injury rates and the foundry industry was not presented, the magistrate was entitled to assume, as was Congress in passing the Occupational Safety and Health Act, a direct connection between injuries and violative hazards. *See, e. g.,* 29 U.S.C. § 651; *Atlas Roofing Co. v. OSHRC,* 430 U.S. 442, 444–45 & n.1, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977); *Ferguson v. Skrupa,* 372 U.S. 726, 728–731, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). Moreover, the magistrate could rely on the known expertise of the Secretary in gathering the statistics in the area of occupational injuries and his ability to form a reasoned opinion that this rate indicated a "high incidence" of injuries in the foundry industry. Not to allow inspections of individual foundries, given such a background, would eviscerate the Act and its purposes. *Accord, Reynolds Metals Co., supra. Contra, Marshall v. Weyerhaeuser Co.,* 456 F.Supp. 474 (D.N.J.1978); *Marshall v. Shellcast Corp.,* 5 OSH Cas. (BNA) 1689 (N.D.Ala. July 26, 1977). Thus, the instant warrant was plainly supported by probable cause in the *Camara/Barlow's* sense since Chromalloy was selected for inspection not as the result of the "unbridled discretion" of a field agent, but rather, pursuant to "a National-Local plan" designed by agency officials for the purpose of reducing the high incidence of occupational injuries and illnesses found in the metal-working and foundry industry.

C.

The last argument presented by Chromalloy is that the scope of the warrant is overly broad. It authorized the following inspection, which, in essence, paraphrases portions of the Act and other OSHA regulations (*see, e. g.,* 29 U.S.C. § 657(a)(1), (2); 29 CFR §§ 1903.7(a), (b), (d); 29 CFR § 1903.3; 29 CFR § 1903.10):

You Are Authorized to enter the above described premises during regular working hours or at other reasonable times, and to inspect and investigate in a reasonable manner and to a reasonable extent (including but not limited to the taking of photographs and samples, and the questioning privately any owner, operator, agent, employer or employee of the establishment), the workplace or environment where work is performed by employees of the employer and all pertinent conditions, structures, machines, apparatus, devices, equipment, materials, and all other things therein (including records, files, papers, processes, controls, and facilities) bearing on whether this employer is furnishing to its employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical injuries to its employees, and whether this employer is complying with the occupational safety and health standards promulgated under the Act and the rules, regulations, and orders issued pursuant to the Act.

The purpose of the inspection was to determine whether Chromalloy is in compliance with health and safety regulations issued by OSHA. Because the exact location of violations cannot be known prior to entering the establishment, a narrow, restricted warrant would severely defeat the purposes of the Act. For example, if OSHA compliance officers were prevented from conducting comprehensive inspections, employers could easily present special "sanitized" areas to them while concealing real violations. In this situation the scope of an OSHA inspection warrant must be as broad as the subject matter regulated by the statute and restricted only by the limitations imposed by Congress and the reasonableness requirement of the Fourth Amendment. *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 201, 208–210, 215–216, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *Colonnade Corp. v. United States,* 397 U.S. 72, 77, 90 S.Ct. 774, 25 L.Ed.2d 60 (1969). The warrant here satisfies these limitations.

Because the instant warrant apprised Chromalloy of the inspection's scope, admittedly broad because no meaningful limitation on scope could be devised, the warrant was proper. *See Dravo Corp. v. Marshall,* 5 OSH Cas. (BNA) 2057 (D.Pa.1977); *aff'd,*

578 F.2d 1373 (3d Cir. 1978) (upholding general inspections). To decide otherwise would render meaningless the Supreme Court pronouncement in *Barlow's* that the Secretary's "entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises," 436 U.S. at 320, 98 S.Ct. at 1824, and would defeat the federal interest in providing workers with safe working places.

After arguments had been heard in this matter, Chromalloy filed a motion under Fed.R.App.P. 27, asking this court summarily to reverse and vacate the case on the ground of lack of subject matter jurisdiction. The basis for the motion would appear to be the Fifth Circuit case of *Marshall v. Gibson's Products, Inc. of Plano*, 584 F.2d 668 (5th Cir. 1978). Having considered the motion and the Secretary's response opposing it, we deny the motion. With deference, we decline to follow the view of the Fifth Circuit; rather, we believe that the dissent filed by Judge Tuttle in the *Gibson's Products* case expresses the better view.

The judgment of the district court is affirmed and the stay heretofore granted by this court is vacated.

PELL, Circuit Judge, concurring in 77–1459 and dissenting in 77–1744.

Inasmuch as the warrant application in Cause No. 77–1459 appears to meet the probable cause standards set forth in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), I concur in that part of the opinion. With regard to Cause No. 77–1744, however, while the showing of probable cause in the warrant application may present a borderline case under *Barlow's*, it does not appear to me sufficiently to inform the magistrate that "a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources." 436 U.S. at 321, 98 S.Ct. at 1825.

Perhaps the magistrate may have known what the scope of a "National-Local" plan is but I confess I do not. Is there a high incidence of occupational injuries and illness in the metal-working and foundry industry nationally or is the situation just in the particular Wisconsin area? Is the high incidence higher than many other industries? There are undoubtedly many factories involved in metal-working. Is the plan limited just to metal-working in foundries or is the scope of the plan broad enough to include the many non-foundry metal-working plants?

Without much doubt if there had been an administrative plan derived from neutral sources which indicated the propriety of the inspection of this particular plant, the application could have been sufficiently specifically worded to have passed muster under *Barlow's* without "the consumption of enforcement energies in the obtaining" of the warrant exceeding "manageable proportions." 436 U.S. at 321, 98 S.Ct. at 1825.

I therefore respectfully dissent in Cause No. 77–1744.