876 F.2d 1485
 14 O.S.H. Cas.(BNA) 1081, 1989 O.S.H.D. (CCH)
P 28,605
 In the Matter of Application to Adjudge TRINITY INDUSTRIES,
INC. In Civil Contempt. (Two Cases)
UNITED STATES of America, Plaintiff-Appellee,
v.
TRINITY INDUSTRIES, INC., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee, Cross-Appellant,
v.
TRINITY INDUSTRIES, INC., Defendant-Appellant, Cross-Appellee.
Ann MCLAUGHLIN, Secretary of Labor, United States Department
of Labor, Plaintiff-Appellee,
v.
MOSHER STEEL COMPANY, DIVISION OF TRINITY INDUSTRIES, INC.,
and Roger Love, Plant Manager, Defendants-Appellants.
 Nos. 87-3566, 87-3864, 87-3835, 88-7152 and 88-7502.
 United States Court of Appeals, Eleventh Circuit.
 July 11, 1989.
 
 Robert E. Rader, Jr. and Frederick W. Addison, Rader, Addison & Story, P.C., Dallas, Tex., Peter Reed Corbin, Corbin & Dickinson, Jacksonville, Fla., and John J. Coleman, Jr., Bradley, Arant, Rose & White, Birmingham, Ala., for defendants-appellants.
 Dorthea Beane, Asst. U.S. Atty., Jacksonville, Fla., Michael F. Hagan, Office of the Sol., U.S. Dept. of Labor, Atlanta, Ga., John Shortall, Office of the Sol., U.S. Dept. of Labor, and Ann Rosenthal, Appellate Litigation, Washington, D.C., for plaintiffs-appellees.
 Appeals from the United States District Court for the Middle District of Florida.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before KRAVITCH and COX, Circuit Judges, and MORGAN, Senior Circuit Judge.
 COX, Circuit Judge:
 
 
 1
 These consolidated cases are on appeal from final orders of district courts for the Northern District of Alabama and the Middle District of Florida finding Mosher Steel Company (Mosher) and Trinity Industries, Inc. (Trinity) in contempt of court for failure to honor Occupational Safety and Health Administration (OSHA) inspection warrants. Concluding that the district courts did not abuse their discretion in holding Mosher and Trinity in contempt, we affirm in part and reverse in part.
 
 I.
 
 2
 In 1983, two federal magistrates issued the Secretary of Labor (Secretary) two separate warrants, one authorizing a health and safety inspection of Trinity's Jacksonville, Florida plant, which manufactures propane gas cylinders, and the other, a safety inspection of Mosher's Birmingham, Alabama plant, which manufactures fabricated structural steel, for possible violations of the Occupational Safety and Health Act, 29 U.S.C. Secs. 651-78 (1982) (the OSH Act). The warrants were not based on specific complaints; instead, they were issued pursuant to OSHA plans of programmed inspections.
 
 
 3
 Trinity and Mosher refused to permit the inspections. Thereafter, the Secretary petitioned the district courts for the Middle District of Florida and the Northern District of Alabama, respectively, to hold Trinity and Mosher in civil contempt for failure to honor the warrants. In the contempt proceedings, Trinity and Mosher filed answers contesting the validity of the warrants, and counterclaims for declaratory judgments alleging that the warrants were invalid because the Secretary had not established probable cause and because OSHA's administrative plans for scheduling programmed inspections were invalid. Trinity and Mosher each sought a subpoena duces tecum to order production of certain OSHA documents relating to the plan. The Secretary moved to quash the subpoenas and asked the district courts for protective orders, arguing that Trinity and Mosher could not engage in discovery beyond the "four corners" of the warrant applications. Trinity and Mosher responded with motions to compel discovery under Fed.R.Civ.P. 37(a).
 
 A. Mosher Litigation
 
 4
 The district court for the Northern District of Alabama decided in Mosher's favor, ordering discovery and thereafter denying the Secretary's motions to stay discovery and dismiss Mosher's counterclaim. The Secretary refused to comply with the discovery order and asked the district court to certify the discovery and warrant issues for interlocutory appeal. The district court granted the request, but this Court denied the Secretary's petition. Thereafter, the district court again ordered the Secretary to comply with its discovery order and, once again, the Secretary refused to do so. Subsequently, the court imposed discovery sanctions against the Secretary, dismissing the contempt action with prejudice, entering judgment by default on Mosher's counterclaim, quashing the inspection warrant, enjoining further inspection of Mosher pursuant to OSHA's administrative plan, and awarding attorneys' fees to Mosher. The Secretary appealed.
 
 
 5
 On appeal, this Court held that the district court abused its discretion in ordering discovery and, therefore, vacated the court's order imposing sanctions and remanded the case for a decision on the merits of the Secretary's contempt complaint and Mosher's motion to quash the inspection warrant. Donovan v. Mosher Steel Co., 791 F.2d 1535, 1536 (11th Cir.1986). Additionally, this Court instructed the district court to dismiss Mosher's counterclaim, rejecting the argument that OSHA's inspection plan underlying the warrant "is somehow separable from the warrant application and may be independently attacked in a proceeding to enforce the warrant." Id. at 1537.
 
 
 6
 On remand, cross-motions for summary judgment were filed by the parties. The district court determined, based on the information contained in the warrant application, that there was probable cause for the issuance of the warrant and, accordingly, held Mosher in civil contempt for failure to honor the warrant. The court ordered Mosher to comply with the warrant and imposed a $1,000 per day fine--to commence ten days thence--for each day Mosher refused to permit the inspection. On the ninth day following the date of the court's order, Mosher filed a motion for stay of judgment pending appeal. On the tenth day following the order--the day on which Mosher became obligated to pay the $1,000 per day fine--the motion for stay was denied. Thereafter, Mosher permitted the inspection and appealed (No. 88-7152).
 
 
 7
 Subsequent to Mosher's appeal, the Secretary filed a motion to amend the district court's judgment to include an award of costs and attorneys' fees. The court summarily denied that motion, and the Secretary appealed (No. 88-7502).
 
 B. Trinity Litigation
 
 8
 Pursuant to Trinity's motion to compel, the district court for the Middle District of Florida ordered discovery relative to OSHA's inspection plan. Thereafter, the Secretary filed a motion to stay discovery pending this Court's decision in Donovan, which motion was granted.
 
 
 9
 Following Donovan and on cross motions, the district court granted the Secretary summary judgment, holding Trinity in civil contempt for dishonoring the Secretary's inspection warrant. Trinity was ordered to permit the inspection and pay the Secretary's litigation costs. The court retained jurisdiction to determine the propriety of awarding attorneys' fees to the Secretary. Trinity appealed (No. 87-3566).
 
 
 10
 Pursuant to its reservation of jurisdiction over the issue and following Trinity's appeal of the summary judgment order, the district court granted a partial award of attorneys' fees to the Secretary. 674 F.Supp. 337. Both parties appealed (No. 87-3835).
 
 
 11
 Subsequent to the district court's first two orders, the Secretary again tried to inspect Trinity's facilities. Trinity refused to cooperate. The Secretary again initiated civil contempt proceedings against Trinity. Holding Trinity in contempt, the district court ordered Trinity to permit the inspection and imposed a $10,000 per day fine for each day that Trinity refused to do so. Trinity delayed the inspection for one day, incurred a $10,000 fine, and appealed the district court's order (No. 87-3864).
 
 II.
 
 12
 Four major issues are presented on appeal. First, both Mosher and Trinity contend that because OSHA did not establish probable cause for issuing the OSHA inspection warrants, the district courts abused their discretion in holding them in civil contempt for failing to honor the warrants. Second, Trinity asserts that the district court abused its discretion in imposing sanctions against it after adjudging Trinity in contempt for failing to honor the inspection warrant. Third, with respect to the Trinity litigation, the Secretary maintains that the district court abused its discretion in excluding from its attorneys' fees award certain costs it incurred in connection with the litigation. Finally, with regard to the Mosher litigation, the Secretary contends that the district court abused its discretion in denying the Secretary's application for attorneys' fees. These issues are discussed seriatim.
 
 A. Civil Contempt Issue
 
 13
 As noted, the district courts held Mosher and Trinity in civil contempt for failing to honor the OSHA inspection warrants. On appeal, Mosher and Trinity challenge the orders as improper, asserting that the warrants, since not based on probable cause, should have been quashed. More specifically, they contend that the warrant applications in question did not contain sufficient information from which the magistrates could make a probable cause determination. In contrast, the Secretary contends that sufficient information was contained in the applications from which the magistrates could make a probable cause determination, that there was probable cause to support issuance of the warrants, and that Mosher and Trinity properly were held in contempt for their contumacious refusal to honor the warrants. We must review the district courts' civil contempt determinations for an abuse of discretion. Afro-American Patrolmen's League v. City of Atlanta, 817 F.2d 719, 723 (11th Cir.1987) (citing In re Newton, 718 F.2d 1015 (11th Cir.1983)).
 
 
 14
 To determine whether the district courts abused their discretion in holding Mosher and Trinity in civil contempt, we initially must consider whether the federal magistrates acted on probable cause in issuing the warrants authorizing the inspections. See Donovan v. Hackney, Inc., 769 F.2d 650, 652 (10th Cir.1985). If the magistrates did not so act, then the district courts should have quashed the warrants and dismissed the contempt petitions. See Hackney, 769 F.2d at 652; Marshall v. Horn Seed Co., Inc., 647 F.2d 96 (10th Cir.1981).
 
 
 15
 The starting point for any analysis of probable cause for OSHA administrative search warrants is Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978),[1] wherein the Supreme Court stated:
 
 
 16
 For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment]." * * * A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights.
 
 
 17
 Id. at 320-21, 98 S.Ct. at 1824-25 (citations and footnotes omitted). To determine whether a warrant application meets the Barlow's "administrative plan" criterion (as contrasted with the "specific evidence of a violation" criterion), the magistrate must apply a two-part test: First, the magistrate must determine that the plan pursuant to which the warrant is to be issued is based on specific, "neutral" criteria and, second, the magistrate must determine that the warrant application clearly and adequately establishes that the particular company was selected for inspection pursuant to an application of the plan's neutral criteria. See Donovan v. Trinity Industries, Inc., 824 F.2d 634, 635 (8th Cir.1987) (citing Brock v. Gretna Machine & Ironworks, Inc., 769 F.2d 1110, 1112 (5th Cir.1985)). In reviewing a magistrate's probable cause determination, this Court generally may consider only that evidence which was presented to the magistrates,[2] which, in the case before this Court, consists of the warrant applications and supporting materials. Therefore, with the Barlow's test in mind, we must examine the applications in question.
 
 1. The Plans
 
 18
 The warrant applications involved here were virtually identical. Each contained a copy of the Secretary's administrative plan for programmed health and safety inspections (CPL 2.25C) and a sworn affidavit by an OSHA supervisor declaring that Mosher and Trinity were selected for safety and health inspections, respectively, pursuant to that plan. Additionally, the Trinity application was accompanied by a copy of CPL 2.25B (another administrative plan for programmed health and safety inspections), and a sworn affidavit by an OSHA supervisor declaring that Trinity had been selected for a safety inspection pursuant to that plan.
 
 
 19
 To enable a magistrate to determine whether the first prong of the Barlow's test has been met, the warrant application must contain adequate information from which the magistrate properly may assess the inspection plan's neutrality. Donovan v. Mosher Steel Co., 791 F.2d 1535, 1538 (11th Cir.1986). "The adequacy determination is to be made by examining the inspection plan itself to ascertain that it contains the requisite neutral criteria," Brock v. Gretna Machine & Ironworks, Inc., 769 F.2d 1110, 1113 (5th Cir.1985), and "as a whole is susceptible of neutral nonarbitrary application." Industrial Steel Products Co., Inc. v. OSHA, 845 F.2d 1330, 1333 (5th Cir.1988). The court is not authorized to inquire into the facts which presaged formulation of the plan. Gretna, 769 F.2d at 1113.
 
 
 20
 CPL 2.25B and CPL 2.25C, which are virtually identical, have received widespread acceptance by the courts.[3] Each establishes a three-step, "worst-first" ranking system for inspecting companies in high-hazard industries for health and/or safety violations. Under the plans, the national OSHA office initially provides the area OSHA office with a statewide Industry Ranking Report, which ranks companies according to lost workday injury (LWDI) rates (for safety inspections) or potential exposure to hazardous substances (PEHS) (for health inspections) using a four-digit Standard Industrial Classification (SIC) Code. The industry with the highest LWDI or PEHS rate is ranked first. The national office also provides the area office with a list of companies for each SIC Code on the statewide Industry Ranking Report that are located within the area office's jurisdiction. Companies with ten or fewer employees are not shown on the list, and companies having a better LWDI rate than the national average for all private sector industries are not included on the list for safety inspections. The companies are listed by SIC Code, county, and size. Within each SIC Code, counties are listed alphabetically, and within each county, companies are listed according to size, with the largest company being listed first.
 
 
 21
 After receiving the statewide Industry Ranking Report from the national office, the area office examines the list for errors and makes appropriate additions or deletions. For safety inspections, any company that was inspected within the previous fiscal year is deleted from the list; for health inspections, however, any company that underwent a "substantially complete" health inspection within the current year or previous three fiscal years and had no serious violations cited is removed from the list. After changes are made to the list, all remaining institutions are numbered consecutively.
 
 
 22
 Finally, the area OSHA office compiles the inspection register. In so doing, the office calculates the number of companies on the register by doubling the number of programmed inspections projected for the fiscal year. Then, the inspection register is divided into two "cycles," with those companies listed on the first half of the list being grouped in one cycle, and those on the other half being grouped in the second cycle. Within an inspection cycle, companies are inspected in an order that makes most efficient use of OSHA's resources. With only limited exceptions, each inspection cycle must be completed before a new cycle is begun.
 
 
 23
 Mosher and Trinity strenuously assert that CPL 2.25B and CPL 2.25C are unfair and engender discriminatory and selective enforcement. In our opinion, however, CPL 2.25B and 2.25C are rational, neutral plans which satisfy the first prong of the Barlow's test. Clearly, each is calculated to result in an unbiased enforcement of the OSH Act and is intended and designed to protect the greatest number of employees who are exposed the greatest on-the-job health and safety risks. For safety inspections, for instance, only those companies having a safety record below the national average for all private sector industries are ever inspected. Furthermore, for both health and safety inspections, companies are ranked on a "worst-first" basis so that companies in the most hazardous industries are inspected first. Within the "worst" industries, companies are ranked alphabetically, according to county. Conceivably, a company which is included in the "worst" industry ranking could escape inspection during its designated cycle if it is located in a county the name of which begins with a letter near the end of the alphabet. That fact, however, hardly justifies characterizing the plans as discriminatory.
 
 
 24
 After the alphabetical ranking is made, companies are ranked in descending order based on the number of employees, a step which obviously furthers the objective of protecting the greatest number of employees. Moreover, the process of dividing the total number of companies to be inspected into two groups or "cycles" is patently indiscriminatory. Finally, inspecting firms within a cycle in an order which makes most efficient use of OSHA's resources does not alter the plans' neutrality. See, e.g., Industrial Steel Products Co., Inc. v. OSHA, 845 F.2d 1330, 1334 (5th Cir.1988).
 
 
 25
 Ultimately, the plans may result in relatively frequent inspections of a select portion of all industries (the high-hazard sector); however, it is entirely reasonable for OSHA to concentrate on the most dangerous workplaces having the most employees at risk. Industrial Steel Products Co. v. OSHA, 845 F.2d 1330, 1334 (5th Cir.1988); Donovan v. Trinity Industries, Inc., 824 F.2d 634, 636-37 (8th Cir.1987). In fact, that result is consistent with OSHA's objective of reducing safety and health risks in the workplace.
 
 
 26
 2. Inspection of Mosher and Trinity Pursuant to the Plans
 
 
 27
 Having determined that the first prong of the Barlow's test was satisfied with respect to the OSHA plans in question, it is necessary to consider the second prong of the test: whether the warrant applications clearly and adequately establish that Mosher and Trinity were selected pursuant to the plans' specific, neutral criteria. Appellants contend that this prong of the Barlow's test was not satisfied because the applications in question did not contain adequate information from which the magistrates could determine how Mosher and Trinity were selected for inspection. More specifically, Mosher and Trinity contend that Barlow's requires the Secretary, in its warrant applications, to demonstrate affirmatively that the processes for selecting particular companies for inspection are reasonable, fair, and nondiscriminatory by appending encoded industry ranking reports and establishment lists to every warrant application. Without such documents, they maintain, the magistrate cannot determine how many businesses are subject to inspection, how frequently the selected businesses will be inspected, how many of Mosher and Trinity's direct competitors are exempted or excluded from OSHA review, and whether local additions to or deletions from the establishment lists were made arbitrarily.
 
 
 28
 Mosher and Trinity find support for their argument in a portion of Brock v. Gretna Machine & Ironworks, Inc., 769 F.2d 1110 (5th Cir.1985), which reads:
 
 
 29
 But the application contained neither the establishment list nor a description of the procedure followed in the selection of Gretna.
 
 
 30
 * * *
 
 
 31
 ... Indeed, OSHA provided the court in this case with an industry rank list from Connecticut and an establishment list from a county in Massachusetts. We see no reason why OSHA could not have provided the court with relevant lists from Louisiana, encoded to protect the identity of other inspection targets.
 
 
 32
 Id. at 1113 & n. 6.
 
 
 33
 Significantly, no other circuit requires OSHA to append such documents to its warrant applications. See, e.g., Pennsylvania Steel Foundry & Machine Co. v. Secretary of Labor, 831 F.2d 1211, 1215 (3rd Cir.1987); Donovan v. Trinity Industries, Inc., 824 F.2d 634, 636 (8th Cir.1987); Donovan v. Enterprise Foundry, Inc., 751 F.2d 30, 33 (1st Cir.1984); Stoddard Lumber Co. v. Marshall, 627 F.2d 984, 988-89 (9th Cir.1980). Indeed, even the Fifth Circuit has questioned its Gretna decision. See Industrial Steel Products Co., Inc. v. OSHA, 845 F.2d 1330, 1337 (5th Cir.1988). ("Gretna does not mandate that an encoded establishment list or inspection register be adduced in the application for an administrative warrant in order to show probable cause. Local officials have the option of supplying either an encoded establishment list or the register; or, a description of how the list and register were compiled. The test is whether the magistrate can be satisfied that the target establishment was placed on the register by an application of the plan's specific neutral criteria."). Other courts have held, and we agree, that in order to satisfy the second prong of the Barlow's test, the warrant application need only contain a description of the procedure used in selecting a particular company for inspection (i.e., describe how the establishment lists and inspection registers in question were compiled and how a company was chosen for inspection from among those contained on the register). See Industrial Steel, 845 F.2d at 1337; Trinity Industries, 824 F.2d at 636.[4]
 
 
 34
 In this case, each of the applications in question contains a sworn affidavit by an OSHA supervisor declaring that Mosher and Trinity were selected for inspections pursuant to OSHA's administrative plans for programmed inspections. Each affidavit contains a detailed description of how the plans were executed, including how the relevant establishment lists and inspection registers were developed and how Mosher and Trinity were chosen from the registers for inspection. The information provided was sufficient to enable the magistrates to conclude that Mosher and Trinity were selected by application of the plans' specific, neutral criteria.
 
 
 35
 Since both warrant applications satisfied the Barlow's test for probable cause, we conclude that the magistrates did not err in issuing the warrants authorizing the inspections of Mosher and Trinity, and the district courts acted within their discretion in holding Mosher and Trinity in civil contempt for failing to honor those warrants. See also Donovan v. Hackney, Inc., 769 F.2d 650 (10th Cir.1985).
 
 B. Trinity's Sanctions Issue
 
 36
 Trinity maintains that the district court abused its discretion when it imposed sanctions against Trinity after Trinity twice refused to honor the OSHA inspection warrant. Specifically, Trinity contends that the $10,000 per day sanction imposed against it was excessive, punitive, and unnecessary, particularly in light of the fact that Trinity urged the district court to impose a $500 per day fine and assured the court that it would permit the inspection after incurring one day's fine.
 
 
 37
 We must review the district court's decision to impose civil contempt sanctions for an abuse of discretion. General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir.1986). Sanctions may be imposed to coerce the contemnor to comply with the court's order, United States v. United Mine Workers, 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947), but may not be so excessive as to be punitive in nature. Florida Steel Corp. v. NLRB, 648 F.2d 233, 239 (5th Cir. Unit B 1981); Lance v. Plummer, 353 F.2d 585, 592 (5th Cir.), cert. denied, 384 U.S. 929, 86 S.Ct. 1380, 1445, 16 L.Ed.2d 532 (1965). In establishing an amount to impose, the court must consider several factors, including the character and magnitude of the harm threatened by continued contumacy, the probable effectiveness of any suggested sanction in bringing about compliance, and the amount of the contemnor's financial resources and consequent seriousness of the burden to him. See United Mine Workers, 330 U.S. at 304, 67 S.Ct. at 701. Perfect Fit Industries, Inc. v. ACME Quilting Co., 673 F.2d 53, 56-58 (2d Cir.1982).
 
 
 38
 We conclude that the district court did not abuse its discretion in imposing sanctions against Trinity for failing to honor the OSHA inspection warrant. Trinity's repeated refusals to permit an inspection evidenced Trinity's willful, deliberate, and brazen contumacy and made obvious the need for the district court to resort to coercive tactics to secure compliance with its contempt orders. Without the sanctions, Trinity's obstinance may have forestalled inspection beyond the three year period during which the inspection actually was delayed.
 
 
 39
 Furthermore, the district court's decision to set sanctions at $10,000 per day was entirely reasonable. Trinity is a Fortune 500 company having vast financial resources at its command. In 1986, Trinity had net sales of $434,326,000 and net assets of $139,989,000. See 1987 Moody's Industrial Vol. II, Manual p. 5920. The sanction amount had to be substantial enough to compel Trinity to comply with the contempt orders. Indeed, the amount imposed was sufficient to incite Trinity to act and was not so excessive and disproportionate to Trinity's economic resources as to be punitive. Cf. Perfect Fit Industries, Inc. v. ACME Quilting Co., Inc., 673 F.2d 53, 58 (2d Cir.1982) (civil contempt sanction of $5,000 per day imposed against company having sales volume of more than $20,000,000 per year held to be reasonable in light of willful nature of defendant's conduct).
 
 
 40
 We find unpersuasive Trinity's argument that such a substantial amount was not necessary to secure an inspection of Trinity's facilities. As noted, Trinity asked the district court to impose a $500 per day sanction and assured the court that compliance with the contempt orders would be forthcoming once Trinity incurred one day's penalty. Trinity obviously had tactical reasons for wanting to incur a penalty and was intent on delaying the inspection until it had done so. It is not the function of the court in imposing sanctions for civil contempt, however, to accommodate a contemnor in preserving error for appeal. Rather, the court's task is to determine what amount is necessary to ensure compliance. In light of Trinity's two prior refusals to permit an inspection, the district court could have concluded that Trinity's assurances that it would allow an inspection were insincere and were properly disregarded; such a conclusion would not have constituted an abuse of discretion.
 
 C. Attorneys' Fees Issues
 1. Trinity Litigation
 
 41
 Subsequent to issuing a second order of contempt against Trinity, the district court granted a partial award of attorneys' fees to the Secretary, which order both parties challenge on appeal. Specifically, the court limited the award to a reasonable hourly fee, exclusive of pro rata overhead expenses such as rent and employee benefits, for hours expended following this court's decision in Mosher Steel. In so limiting the award, the court recognized the Secretary's entitlement to expenses that reasonably and necessarily were incurred in the attempt to enforce compliance with the contempt orders, but concluded that those expenses did not include expenses incurred prior to Mosher Steel, since those efforts did not result in the ultimate finding of contempt. Instead, the "fortuitous timing" of the Mosher Steel decision, which "removed a serious impediment to the Secretary's enforcement action," combined with the ex parte nature of the warrant proceedings, the fact that the warrant order could be challenged only by provoking the contempt proceedings, and Trinity's apparent good faith pursuit of the contempt litigation, inclined the court to restrict its award.
 
 
 42
 On appeal, the Secretary challenges the court's exclusion of amounts attributable to proceedings conducted prior to the Mosher Steel decision from its award and the omission of pro rata overhead expenses from its hourly rate computation. Trinity, in contrast, argues that the attorneys' fees award is punitive and, therefore, should be set aside. We must review the district court's award for an abuse of discretion.
 
 
 43
 In establishing a fees award, the district court must follow the guidelines contained in Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1982) and Norman v. Housing Authority, 836 F.2d 1292 (11th Cir.1988). Under Hensley and Norman, the district court initially must establish a "lodestar" figure by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Hensley, 461 U.S. at 433, 103 S.Ct. at 1939. To determine the number of hours reasonably expended, the court must determine the number of hours actually spent and subtract from that figure hours which are excessive, duplicative, unproductive, or otherwise unnecessary. Hensley, 461 U.S. at 434, 103 S.Ct. at 1939. Then, after the lodestar is determined, the court may make adjustments for results obtained. Id. "If the result was excellent, then the court should compensate for all hours reasonably expended. Popham v. City of Kennesaw, 820 F.2d 1570, 1578 (11th Cir.1987). If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. Hensley, 461 U.S. at 436-37, 103 S.Ct. at 1941." Norman, 836 F.2d at 1302.
 
 
 44
 The Secretary's first claim of error requires us to determine whether pro rata overhead expenses are properly included as an element of a government attorneys' fees request. In reality, some portion of every fees request may be allocable to reimbursing counsel for overhead expenses, see EEOC v. Strasburger, Price, Kelton, Martin, and Unis, 626 F.2d 1272, 1275-76 (5th Cir.1980); however, such expenses are not always recoverable. Where overhead expenditures depend on the losses and successes of a particular caseload and are influenced by business decisions made in a competitive environment, they generally are recoverable. Hence, private practitioners, whose overhead expenses must be, and ultimately are passed onto clients via a mark-up in hourly rates charged, typically can recoup such expenses as part of a fees award. The Secretary has cited no authority, nor has our research uncovered any, however, which suggests that the Secretary's overhead expenses are analogous to those of a private law firm. Private firms contain overhead expenses within a framework of client-billable work. The government, however, incurs these expenses without regard to the decision to pursue a particular matter. The arbitrary assignment of a portion of these costs to the suit against Trinity, therefore, would be inappropriate.
 
 
 45
 The Secretary's second claim of error constitutes a challenge to the district court's adjustment of the lodestar for results obtained. As noted, the lodestar may be adjusted upward or downward, depending on the degree of success obtained relative to the scope of the litigation as a whole. Norman, 836 F.2d at 1302. Typically, distinctions are made, for purposes of adjustments, between discrete, successful and unsuccessful claims, with attorneys' fees awards limited to amounts attributable to time spent on the successful claims. It is equally permissible, however, for a district court to adjust the lodestar by examining discrete phases of litigation, and restrict an award to hours expended on that portion of the litigation which ultimately resulted in success.
 
 
 46
 In this case, the district court did not abuse its discretion in dividing the Trinity litigation into pre- and post- Mosher Steel phases, and appropriately limited the Secretary's recovery to amounts expended on the latter phase, since the Secretary's efforts during that phase were those which directly led to the ultimate finding of contempt.
 
 2. Mosher Litigation
 
 47
 Subsequent to holding Mosher in civil contempt for failing to honor the OSHA inspection warrant, the Secretary submitted a motion to amend the court's final judgment order to include an award of costs and attorneys' fees. Although the court did amend the order to tax costs against the defendant, the court, without explanation for its action, denied the Secretary's request for attorneys' fees. On appeal, the Secretary argues that the district court abused its discretion when it failed to provide any principled reasons for its denial of fees.
 
 
 48
 We must review the district court's denial of attorneys' fees for an abuse of discretion. Without any explanation for its denial of a request for fees, however, it is impossible for us to discern the correctness of the district court's judgment. Continental Illinois Corp. v. Lewis, 827 F.2d 1517, 1524 (11th Cir.1987). It is necessary, therefore, to remand the case to the district court for an explanation of the basis for its denial of the Secretary's request for attorneys' fees.
 
 III.
 
 49
 In consideration of the foregoing, we AFFIRM the district courts' determinations that the Secretary established probable cause for issuance of the OSHA administrative warrants. We AFFIRM the district courts' orders holding Trinity and Mosher in civil contempt. We AFFIRM the district court's orders imposing $10,000 per day sanctions against Trinity for its failure to purge itself of contempt by permitting an OSHA inspection and granting a partial award of attorneys' fees to the Secretary. We REMAND the Mosher case (No. 88-7502) to the district court for further findings and the legal basis for its denial of the Secretary's request for attorneys' fees.
 
 
 
 [1]
 In Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the Supreme Court ruled that nonconsensual, warrantless OSHA inspections are unconstitutional, but permitted the Secretary of Labor to promulgate a general, neutral administrative plan for enforcing the OSH Act and establishing administrative probable cause for a warrant
 
 
 [2]
 In Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court carved out a single narrow exception to this rule, permitting a reviewing court, on a "substantial preliminary showing" by the party bringing the warrant challenge, to hold an evidentiary hearing to determine the truthfulness of the facts presented to the magistrate. No Franks claim is presented here. Donovan v. Mosher Steel Co., 791 F.2d 1535, 1537 n. 1 (11th Cir.1986). Hence, in reviewing the probable cause claims raised by Mosher and Trinity, we shall consider only that evidence which was contained in the warrant applications and presented to the magistrate. Id.; see also West Point Pepperell v. Donovan, 689 F.2d 950, 959 (11th Cir.1982)
 
 
 [3]
 See, e.g., Donovan v. Hackney, Inc., 769 F.2d 650, 653 (10th Cir.1985); Donovan v. Wollaston Alloys, Inc., 695 F.2d 1, 5 (1st Cir.1982); Stoddard Lumber Co. v. Marshall, 627 F.2d 984, 988-89 (9th Cir.1980); Marshall v. Chromalloy American Corp., 589 F.2d 1335, 1343-45 (7th Cir.1979); Urick Foundry Co. v. Donovan, 542 F.Supp. 82 (W.D.Pa.1982); Ingersoll-Rand Co. v. Donovan, 540 F.Supp. 222, 224 (M.D.Pa.1982); Erie Bottling Corp. v. Donovan, 539 F.Supp. 600 (W.D.Pa.1982); Donovan v. Athenian Marble Corp., 535 F.Supp. 176, 180 (W.D.Okla.1982); Chicago Aluminum Casting Co. v. Donovan, 535 F.Supp. 392, 297 (N.D.Ill.1981); In Inspection of: Xenia Foundry & Machine Co., 1981 CCH OSHD p 25,513 (S.D.Ohio 1981); In re Peterson Builders, Inc., 525 F.Supp. 642, 645 (E.D.Wis.1981)
 
 
 [4]
 In reaching this conclusion, we reject appellant's assertions for two reasons. First, appellants' argument fundamentally misconstrues the nature of the inquiry being conducted by the magistrates. The Barlow's Court contemplated that proceedings to review OSHA warrant applications would be limited in scope and would not unduly consume judicial and administrative resources or exceed manageable proportions. See Barlow's, 436 U.S. at 321, 98 S.Ct. at 1824. An extended inquiry into the validity of the data underlying a particular administrative plan and proposed inspection would far exceed the bounds of the limited inquiry contemplated by Barlow's. See Marshall v. Chromalloy American Corp., 589 F.2d 1335, 1343 (7th Cir.1979). The magistrates should not be placed in a position of having to second-guess the wisdom of an administrative plan, but should be entitled to defer to the Secretary's expertise in formulating a plan, in compiling statistical data pursuant to the plan, and in selecting individual companies for inspection pursuant to that data
 Second, a magistrate is entitled to rely on the veracity of sworn statements that are included in a warrant application. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) (a government officer is presumed to be telling the truth when making a sworn statement). In the absence of a substantiated claim that the Secretary did not follow an administrative plan in selecting an establishment for inspection, the magistrate is entitled to rely on an OSHA official's representation that selection was made in a nondiscriminatory manner, pursuant to a plan's neutral criteria. Industrial Steel Products Co. v. OSHA, 845 F.2d 1330, 1337 (5th Cir.1988). Accord Donovan v. Wollaston Alloys, Inc., 695 F.2d 1, 6 (1st Cir.1982); Stoddard Lumber Co. v. Marshall, 627 F.2d 984, 988 (9th Cir.1980); Marshall v. Milwaukee Boiler Mfg. Co., 626 F.2d 1339, 1345 (7th Cir.1980). See also Donovan v. Mosher Steel Co., 791 F.2d 1535, 1538 n. 3 (11th Cir.1988).