[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12595
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-00038-MHC

GOT I, LLC,
KIDS2, INC.,

Plaintiffs-Counter Defendant-Appellants,

versus

XRT, INC.,
DAVID EUGENE SILVERGLATE,

Defendants-Counter Claimant-Appellees,

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 8, 2020)

Before JORDAN, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Kids2, Inc. ("Kids2")[1] initiated a declaratory judgment action in the district court below, seeking to establish that it had not violated a royalty agreement that it had contracted with XRT, Inc., and David Silverglate. Following several summary judgment motions and a jury trial, Kids2 unsuccessfully sought to invoke the attorneys' fees provision in the royalty agreement, claiming that it was the prevailing party within the meaning of the provision and therefore entitled to attorneys' fees. The district court determined that the result of the litigation was a "mixed" outcome and that neither party was entitled to attorneys' fees. Kids2 appeals. After reviewing the record and briefs, we reverse the district court's order.

## I. BACKGROUND

On December 30, 2010, Kids2 purchased the assets of Rhino Toys, Inc. Rhino had developed a number of toys, including the "Oball" line of products. The royalty agreement between Kids2 and Rhino provided that Rhino would receive $4.5 million as an up-front payment; that Rhino's founder and CEO, David Silverglate, would be employed by Kids2 for two years with a $200,000 annual salary; and that Rhino would receive royalty payments for sales of (1) its existing products, (2) new products derived from existing products or designed by

---

[1] Following the docketing of this appeal, Kids2's name was changed to its present form from Kids II, Inc. It moved to amend the caption to reflect the name change and we granted the motion on November 26, 2019.

Silverglate, and (3) combined toys.  After the asset purchase, Rhino reorganized itself as XRT, Inc. (e**X R**hino **T**oys), to collect the payments.

Because the royalty payments were ultimately the reason that this declaratory judgment action was initiated, we pause to note exactly how the payments worked.  First, for "existing products"—that is, products already manufactured or created by Rhino at the time of Kids2's acquisition—XRT was paid a 5% royalty.  Second, for "newly developed products"—those products that were derived from "existing products" or that were developed by Silverglate during his employment with Kids2—XRT was paid a 3% royalty.  Third, and most complicated, XRT was paid a variable royalty for "combined products," which were Kids2 products that incorporated or included an "existing product" or a "newly developed product."  If the starting point for the "combined product" was an "existing product," the initial rate was at 5%; if the starting point was a "newly developed product," the initial rate was 3%.  The applicable royalty for a "combined product" was then discounted based on the product's composition—the more the product included Rhino products, the higher the royalty payment.

The royalty agreement between Kids2 and Silverglate included a provision providing that the prevailing party in any litigation would receive attorneys' fees. The provision states:

> 17.    ATTORNEY'S FEES.  In the event of any dispute, action, arbitration, claim, or other proceeding brought by either party against

3

the other in connection with this Agreement, the prevailing party shall be entitled to recover all costs and expenses in connection with such dispute, arbitration, action, claim or other proceeding, including, without limitation, the fees and costs of its attorneys, whether or not such dispute, arbitration, action, claim or other proceeding proceeds to final resolution or judgment.

The provision does not define "prevailing party," but the agreement further provides, "The laws of Delaware shall control and govern the interpretation and construction of this Agreement in all respects and this Agreement will be deemed to have been made in the State of Delaware."

Several years later, Silverglate believed that Kids2 had changed the way that it calculated its royalty payments and was underpaying him. He retained counsel, who sent a letter to Kids2, asserting that it owed him more than $200,000 in royalty payments. In response, Kids2 initiated the instant declaratory judgment action in the Northern District of Georgia. XRT responded by adding a counterclaim for material breach of the contract, seeking more than $100 million in damages—in other words, it sought an immediate payout of the 75-year term of the Royalty Agreement.

During the course of litigation, the parties filed cross-motions for summary judgment on the issue of whether a product is properly classified as a "newly developed product" because it uses a trademark. The district court denied XRT's motion and granted Kids2's on March 16, 2017, determining that "a product

4

cannot be classified as a Newly Developed Product under the Royalty Agreement based solely on the use of a trademark."

Later, Kids2 moved for partial summary judgment on the issue of whether it committed a material breach of the royalty agreement. After concluding that "Plaintiffs made an initial payment of over $4,450,000, applied a reasonable construction of the ambiguous Royalty Agreement, paid at least 71% of royalties owed, sought a judicial declaration defining their obligations under the agreement when a dispute understandably arose, continued to pay royalties, and escrowed royalty payments Defendants refused to accept after terminating the agreement," the district court concluded that "Plaintiff did not commit a material breach of the Royalty Agreement" and granted Kids2 partial summary judgment on that ground on February 27, 2018. In that same order, however, the district court denied Kids2's motion for summary judgment on the basis that it had not committed a partial breach, concluding that the "Royalty Agreement is ambiguous and there exists significant genuine issues of material fact regarding the proper classification of products under the Royalty Agreement."

Kids2 and XRT filed a proposed consolidated pretrial order, each separately submitting certain issues to be tried. However, the district court framed the issues

5

for the jury to decide in a manner not contested on appeal.[2]  Interrogatories with regard to each of the 55 products were submitted to the jury in the form of two questions: (1) "Have Plaintiffs GOT I/Kids II shown by a preponderance of the evidence that this product is a **Combined Product**?"; and (2) "Have Defendants XRT/Silverglate shown by a preponderance of the evidence that this product is a **Newly Developed Product**?"  The instructions further provided that "**You may select only <u>one</u> 'Yes,' but may select two 'Nos[.]'**"  In other words, the jury would be asked to indicate, product-by-product, if the plaintiffs met their burden, if the defendants met their burden, or if *neither* party had met their burden.

The jury ultimately determined that Kids2 had met its burden on 50 of the 55 products, and that XRT had met its burden on 5 of the 55 products.  All told, including the pretrial judgments, this meant that Kids2 met its burden on 51 of the 57 products, while XRT met its burden on 6 of the 57.  The district court ordered $107,184.47 in damages to XRT.

Following the trial, Kids2 sought a declaration that it, as a "prevailing party," was entitled to attorney's fees under the contractual provision, while XRT sought a declaration that neither party was the prevailing party.  The district court ultimately determined that neither party had prevailed.

---

[2] Though the dispute initially involved 57 contested products, 2 of them were not submitted to the jury—Kids2 received a judgment as a matter of law on one of the products, and it stipulated to judgment on another.

The Court cannot rule that Plaintiffs are the prevailing party. Plaintiffs identified the issues to be tried as whether they "breached the Royalty Agreement" by misclassifying certain products. Because the jury found that certain products were miscategorized, Plaintiffs breached the Royalty Agreement. Although Plaintiffs previously prevailed at summary judgment on whether there was a material breach of the agreement, the outcome of this case was mixed and neither party prevailed. While Defendants prevailed as to the classification of a small number of products, the fact remains that Plaintiffs did not prevail on their declaratory judgment asserting that they properly categorized all products. The amounts awarded in damages is not relevant to this inquiry.

Kids2 timely appealed to us on the issue of attorney's fees.

## II. DISCUSSION

As an initial matter, the parties disagree about the appropriate standard of review. XRT argues that we should review the district court's denial of attorney's fees for abuse of discretion, while Kids2 argues that we should review it *de novo*. After reviewing our precedent, Kids2 is correct. While it is true that some of our cases have said that, generally, we review a district court's grant or denial of attorney's fees for abuse of discretion, *see, e.g.*, *In re Application to Adjudge Trinity Indus.*, 876 F.2d 1485, 1495 (11th Cir. 1989), we note that this determination was made in the context of Rule 11 sanctions, *not* in the context of a contractual attorney's fee provision.

When it comes to reviewing the denial of contractual attorney's fees, "[b]ecause contract interpretation is a question of law, we review the district court's interpretation of the contract and subsequent denial of attorneys' fees *de*

7

*novo.*" *Johnson Enters. of Jacksonville v. FPL Group*, 162 F.3d 1290, 1329 (11th Cir. 1998). In our embrace of broad common-law principles, we have uniformly held that "[c]ontract interpretation is a legal question subject to de novo review by this Court," *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1477 (11th Cir. 1992), and it logically follows, then, that when we interpret a contractual provision providing for attorney's fees, the interpretation of that provision, along with its application, are questions of law, which we review *de novo*. Accordingly, we review the district court's decision anew, as if it had not been heard before and no decision had been rendered.

We begin by noting that, because the contract at issue provided that "[t]he laws of Delaware shall control and govern the interpretation and contraction of this Agreement in all respects," we apply Delaware law to interpret its provisions. *See Koch Bus. Holdings, LLC v. Amoco Pipeline Holding Co.*, 554 F.3d 1334, 1338 (11th Cir. 2009). Delaware law provides that "the proper interpretation of language in a contract is question of law." *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006). "When interpreting a contract, a court's task is to 'satisfy the reasonable expectations of the parties at the time they entered into the contract.'" *Alliance Data Sys. Corp. v. Blackstone*

8

*Capital Parties V L.P.*, 963 A.2d 746, 760 (Del. Ch. 2009) (quoting *Liquor Exch., Inc. v. Tsaganos*, 2004 WL 2694912, at *2 (Del. Ch. Nov. 16, 2004).[3]

The attorneys' fees provision in the Royalty Agreement is relatively straightforward.  It provides:

> In the event of any dispute, action, arbitration, claim, or other proceeding brought by either party against the other in connection with this Agreement, the prevailing party shall be entitled to recover all costs and expenses in connection with such dispute, arbitration, action, claim or other proceeding, including, without limitation, the fees and costs of its attorneys, whether or not such dispute, arbitration, action, claim or other proceeding proceeds to final resolution or judgment.

By using the term "prevailing party," "the parties can be presumed to have intended that the term would be applied by the court as it has traditionally done so." *Brandin v. Gottlieb*, 2000 WL 1005954, at *28 (Del. Ch. July 13, 2000).[4]  In determining which party is "prevailing," Delaware courts apply a context-specific test to determine what the "main issue" was, and which party prevailed on that "main issue." *See Comrie v. Enterasys Networks, Inc.*, 2004 WL 5466650, at *2 (Del. Ch. Apr. 27, 2004).  In other words, "To achieve predominance, a litigant should prevail on the case's 'chief issue.'" *2009 Caiola Family Trust v. PWA,*

---

[3] We note that Delaware courts allow parties to cite unpublished opinions as precedent. *See New Castle Cty. v. Goodman*, 461 A.2d 1012, 1013 (Del. 1983) ("[L]itigants before this Court may cite Orders as precedent so long as they comply with the dictates of Rule 14(b)(vi).").

[4] Both parties agree that under Delaware law, this contractual provision relating to prevailing party attorneys' fees is an "all-or-nothing" proposition. *Comrie*, 2004 WL 5466650, at *2.

*LLC*, 2015 WL 6007596, at \*33 (Del. Ch. Oct. 14, 2015) (quoting *W. Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*, 2009 WL 458779, at \*9 (Del. Ch. Feb. 23, 2009)).  In some situations, "there can be more than one 'chief' or core issue in a case, and where . . . the parties split on two equally core issues, neither can be said to have 'prevailed' so as to trigger the contractual entitlement to fee-shifting in the License Agreement."  *Mrs. Fields Brand, Inc. v. Interbake Foods LLC*, 2018 WL 300454, at \*3 (Del. Ch. Jan. 5, 2018).

In approaching this issue, we find it helpful to contextualize the underlying litigation.  The events preceding Kids2's filing of the complaint are largely undisputed.  Silverglate believed that Kids2 was making inadequate royalty payments to him, so he sent a demand letter asserting that he was entitled to around $200,000 in royalty payments.  Kids2, feeling that it did not owe Silverglate any such payments, initiated the litigation.  It sought a declaration that it had complied with its obligations under the Agreement and the "past due royalties and royalty rates alleged" by Silverglate were "inconsistent with the parties['] obligations under the Royalty Agreement."  Silverglate and XRT responded by filing a counterclaim for $100 million—in essence, seeking to have the end-value of the Royalty Agreement realized immediately because of Kids2's breach.

Throughout the litigation, the scope of relief sought by XRT and Silverglate significantly narrowed—the district court granted Kids2 summary judgment on

10

whether toys produced under a Rhino trademark were "newly developed product" and partial summary judgment on whether it had committed a "material breach" of the Agreement, though it denied Kids2 summary judgment on whether it had committed a "partial breach" of the Agreement. Then, at trial, the combined determinations by the court and the jury led to the outcome that Kids2 had properly classified, and made royalty payments on, 51 of 57 disputed toys. This led to an award of $107,184.47 to XRT and Silverglate—which, we note, is a sharp reduction from the defendants' various demands prior to and during litigation.

To determine whether Kids2 is entitled to contractual attorneys' fees, we must first determine what the "core" or "chief" issue in the litigation was. The district court essentially concluded that the core issue in this litigation was whether Kids2 breached the Royalty Agreement with XRT. Because the jury verdict determined that Kids2 had *partially* breached the Agreement with regard to a small number of products, the district court concluded, "the outcome of the case was mixed."

We conclude that the district court erred in its analysis of this "prevailing party" contract issue. It is true that one of the core issues in the case was whether, and the extent to which, Kids2 breached the Royalty Agreement by misclassifying products. With regard to that issue, the result of this litigation was that Kids2 did misclassify 6 out of the 57 products. But the jury also found that Kids2 properly

11

classified 51 of the 57 products, thus endorsing the position of Kids2 and rejecting the position of XRT. In other words, XRT prevailed with regard to 6 products; Kids2 prevailed with regard to 51 products. We conclude that, even with regard to this one core issue, Kids2 achieved predominance, notwithstanding its minor breach with respect to 6 out of 57 products. Moreover, there were at least two other core issues—whether there was a material breach entitling XRT to an acceleration of royalties and $100 million in damages, and whether the mere use of the Oball trademark dictated a "Newly Developed Product" classification—and Kids2 won both outright. Applying Delaware law, we think it is clear that Kids2 achieved predominance in the litigation, and is the "prevailing party." Accordingly, Kids2 is entitled to "prevailing party" status and to collect attorneys' fees.

## III. CONCLUSION

In sum, we conclude that, pursuant to the attorney's fee provision in the Royalty Agreement it signed with XRT and Silverglate, Kids2 is entitled to "recover all costs and expenses incurred in connection with" the underlying litigation. Our review of Delaware law makes it clear that Kids2 prevailed on all of the "core" issues in the case and therefore achieved "predominance" in the litigation. The district court's decision to the contrary is incorrect as a matter of law.

12

The district court's order is **REVERSED.**  This case is **REMANDED** to the district court for further proceedings consistent with this opinion.